IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEBORAH LEWIS** **PLAINTIFF**

v. CIVIL ACTION NO.: 3:22-cv-462-HTW-LGI

**TEC OF JACKSON, INC.** **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Deborah Lewis, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for race discrimination pursuant to Title VII and 42 U.S.C. § 1981, for age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.*, as amended, ("ADEA") and for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et. seq.*, as amended, ("ERISA") against Defendant TEC of Jackson, Inc.  In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Deborah Lewis, is an adult Caucasian female citizen of Madison County, Mississippi.

2. Defendant, TEC of Jackson, Inc., is Mississippi corporation that may be served with process by serving its registered agent: Brandi F. Callison, 236 East Capitol Street, Jackson, Mississippi 39225.

**JURISDICTION AND VENUE**

4. This Court has federal question jurisdiction and venue is proper in this Court.

5. Plaintiff timely filed a Charge of Discrimination with the EEOC, on May 26,

2021, a true and correct copy of which is attached as Exhibit A.  The EEOC issued a Dismissal and Notice of Right to Sue on May 12, 2022, a true and correct copy of which is attached as Exhibit B.  Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 58-year-old Caucasian female resident of Madison County, Mississippi.

7. Defendant hired Plaintiff on July 16, 1990, as a Data Processor at TEC of Jackson, Inc.

8. As time went by, Plaintiff's position was renamed the CLEC Provisioning Coordinator and Senior & SMS Supervisor.

9. On January 22, 2010, Plaintiff's husband, Alan Lewis, was diagnosed with Non-Hodgkin's B Cell Lymphoma.

10. At that time, Mr. Lewis was covered by Plaintiff's TEC Blue Cross Blue Shield insurance plan and had been since 2004.

11. On February 12, 2021, Plaintiff sent an email to TEC owners James and Joey Garner.

12. In the email signed by "Deborah and Alan Lewis", Plaintiff lavishly thanked the owners for the way that TEC's employee health insurance (i.e., a Blue Cross Blue Shield plan and an AFLAC plan) had substantially assisted she and Mr. Lewis to manage the exorbitant financial burden of Mr. Lewis's cancer treatment.

13. That same day, Joey Garner replied to Plaintiff's email, expressing appreciation for her "kind words."

14. Less than three months later, however, after over 30 years of faithful employment, on April 30, 2021, Plaintiff was abruptly informed that she was summarily terminated from employment with TEC.

15. The alleged reason for Plaintiff's termination was that her work duties were being referred out to a third-party provider.

16. Plaintiff adamantly disputes this allegation, however, noting that the work duties Defendant referred to as being referred out (i.e., Toll Free SMS Position) have not constituted her primary work duties for over ten years.

17. Moreover, the duties of Plaintiff's position were distributed between two other employees (Barbara Tucker and Janice Powell – both black females in their 40s), neither of whom has worked for TEC as long as Plaintiff.

18. It is noteworthy that during Plaintiff's tenure at TEC, Ms. Tucker has received several customer complaints.

19. This begs the question: given Plaintiff's tenure with TEC and her proven superior job performance, why not terminate Ms. Tucker and have Plaintiff absorb her (Ms. Tucker's) work duties instead of the other way around?

20. When Plaintiff was terminated, Plaintiff's health insurance plan (for both her and her husband) ended, and she also lost a life insurance plan along with AFLAC Cancer and AFLAC Accident Plans.

21. After over 30 years of faithful service, when Plaintiff was terminated, a severance agreement was offered to Plaintiff which included a mere four weeks of salary, i.e., approximately $2200.

22. This amount was equal to the four weeks of vacation time Plaintiff had built up but never used, i.e., it was not an offer of anything more than what she was owed already.

23. In contrast to the severe losses of Plaintiff's employment and her health and life insurance plans, this offer showed disrespect for the huge investment of time and hard work Plaintiff had put forth as an employee of TEC.

24. Plaintiff refused to sign it.

25. On or around May 2, 2022, Ms. Tucker told Plaintiff that CLEC Provisioning Manager Sherry Anderson told Ms. Tucker that Plaintiff's duties would be divided between Ms. Tucker, Ms. Powell, and Ms. Anderson.

26. On May 26, 2021, Plaintiff filed an EEOC Charge of Race and Age Discrimination.

27. On July 6, 2021, in response to Plaintiff's Charge with the EEOC, TEC submitted a Position Statement to the EEOC.

28. TEC's Position Statement alleges that Plaintiff's duties "included administration of TEC's SMS database and toll-free orders…"

29. Plaintiff contends that those services of Defendant have been declining for many years, i.e., even prior to 2020, when the alleged "process of restructuring" began.

30. As a result, for years now those services have been outsourced to third-party vendors and Plaintiff has been performing other job duties.

31. Moreover, Plaintiff contends those services and the 800 number services that were outsourced never comprised a large percentage of her work duties.

32. The TEC Position Statement also states that Ms. Tucker and Ms. Powell held different positions from Plaintiff.

33. Plaintiff contends that while that is technically true in regard to job title, in practice there was extensive cross training between the three of them (i.e., Ms. Tucker, Ms. Powell, and Plaintiff) and they all worked with billing, provisioning, and toll-free related duties.

34. Mr. Lewis passed away on May 12, 2022.

35. The cancer rendered him immunocompromised, and he died after he was diagnosed with Covid-19.

36. The cost of Mr. Lewis's medical treatment was exorbitant.

37. He was first diagnosed in January 2010, but it was another 12 years before he passed.

38. Toward the end of his life, Mr. Lewis had a lump and had to undergo two surgeries.

39. At various points in his treatment, he was subjected to expensive medical procedures such as chemotherapy and various scans were performed.

## CAUSES OF ACTION

### COUNT I:  RACE DISCRIMINATION – VIOLATION OF TITLE VII AND 42 U.S.C. § 1981

40. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 39 above as if fully incorporated herein.

41. Defendant discriminated against Plaintiff because of her race based on the facts identified above which is a violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

42. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as humiliation, anxiety and emotional distress.

43. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff giving rise to punitive damages.

## COUNT II: AGE DISCRIMINATION – VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

44. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 43 above as if fully incorporated herein.

45. Defendant's actions constitute intentional discrimination on the basis of age in violation of the ADEA. Specifically, Plaintiff was over the age of 40 and was more than qualified for her position with Defendant having more than 30 years of experience.

46. The unlawful actions of the Defendant complained of above were willful and taken in reckless disregard of the statutory rights of Plaintiff giving rise to liquidated damages.

## COUNT III: VIOLATION OF ERISA

47. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 46 above as if fully incorporated herein

48. Defendant unlawfully discriminated against Plaintiff and discharged Plaintiff due to the fact that she and her husband were participants in Defendant's health and welfare plans, thus intentionally interfering with Plaintiff's ERISA protected rights.

49. By terminating Plaintiff because of the costs incurred by Defendant's health insurance plan for her husband's cancer treatments, Defendant intentionally discriminated against Plaintiff and interfered with Plaintiff's ERISA protected rights.

50. Such actions constitute of violation of Section 510 of ERISA and entitle Plaintiff to reinstatement, including retroactive reinstatement of all health and welfare benefits, back pay, a set off and attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement;
3. Tax gross-up and all make-whole relief;
4. Compensatory damages;
5. Punitive damages;
6. Liquidated damages;
7. Lost Benefits;
8. Pre-judgment and post-judgment interest;
9. Attorney fees and costs; and
10. Such other relief as the Court deems just and appropriate.

THIS the 10th day of August 2022.

                                       Respectfully submitted,

                                       DEBORAH LEWIS, Plaintiff

                               By: /s/ Louis H. Watson, Jr.
                                       Louis H. Watson, Jr.  (MB# 9053)
                                       Nick Norris (MB# 101574)
                                       Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Email: nick@watsonnorris.com